[Memphis & Charleston Rail Road Company v. Lyon.]

# Memphis & Charleston Rail Road Company *v.* Lyon.

## *Action for Killing Live Stock,*

1. *Evidence; what irrelevant.*—In an action against a railroad company for killing live stock, at a locality not at or near any depot, road-crossing, town, or other place where the statute requires the whistle to be blown, speed reduced, &c., the inquiry whether or not the engineer, after having run one or more trips, afterwards, could remember at what points, including depots, road-crossings, and towns though which he passed, he blew the whistle, rang the bell, &c., is irrelevant.

2. *Railroad company; for what damage not responsible.*—A railroad company acquiring a right of way over lands, is not bound to plank or cover a culvert or drain, so as to prevent cattle from getting fastened therein; and is not responsible for the killing by its trains of cattle thus fastened, if it be shown that the company was duly diligent to prevent its trains from injuring them.

3. *Same; what negligence in.*—It is negligence in a railroad company to run its trains on a straight track in the night time at such a rate of speed that the train cannot be stopped in the distance at which the engineer can see cattle, or other obstructions on the track, by the aid of the head-light.

4. *Same; when negligence vel non, question for the jury.*—Where the distance to which the light was thrown by the head-light, which was in proper order and of the best kind in use, is not shown; but only that the engineer could not perceive by its light, at thirty yards distance, a young mule of the color of the earth about a culvert in which it was fastened, and could not stop in forty yards distance, and there is no evidence as to how much of the mule was above the track; it is not error to charge the jury that it was negligence to run the train at a rate of speed at which the engineer could not stop before reaching the mule after seeing it was on the track. Whether or not this was negligence was a question for the jury, in view of all the facts, under appropriate instructions from the court.

APPEAL from Jackson Circuit Court.

Tried before Hon. LOUIS WYETH.

The appellee, David M. Lyon, brought this action against the appellants, the Memphis & Charleston Rail Road Company, to recover damages for the killing of a mule by the cars.

On the trial, after the plaintiff had proved the ownership, value, and the killing of the mule, the appellants introduced the engineer of the train, by which the mule was killed, and he testified, that according to the rules of the company, he made a report of the killing of this mule on his return from the trip on which the accident occurred, and that he had looked at this report, which was filed in the office of the company shortly before testifying in this case. Witness further testified that the mule was fastened between the cross-ties, which were laid on stringers across a water cul-

vert, which was open at the top and not covered, except as crossed by the superstructure of the road, and five or six feet deep; that he did not see the mule until his train, which was a passenger train, and running at the rate of twelve miles an hour, was within about thirty yards of the culvert in which he was fastened; that the mule was a small one, and just the color of the earth which was thrown up on each side of the culvert; that it was impossible to stop a train, such as the one which caused the accident, in less than forty yards, when running at the rate of twelve miles an hour; that as soon as he discovered the mule he made use of all the means in his power known to skillful engineers, such as applying the brakes and reversing the engine, but was unable to stop the train until the mule had been killed. The witness further stated that the accident occurred about midnight, and that the head-light to the engine was as good as any used on any railroad at the time, and that it was in good condition at the time, properly trimmed and burning, and that he was unable by his head-light to discover or observe the mule, situated as he was at a greater distance than thirty yards. It was shown that the accident did not happen near any depot, road-crossing, town, or other place at which the statute requires the bell to be rang, the whistle blown, or the speed reduced. On cross-examination the engineer was asked, by the plaintiff, the following question: "Can you state after having run one of these trips, at what particular points, including depots and other road-crossings and towns through which you pass, you rang the bell and blew the whistle, and did all these things which are required of engineers in driving trains from Stevenson to Memphis." The defendant objected to this question, but the court overruled the objection and required the witness to answer, and the defendant excepted. The witness then answered "that he could not." To this answer the defendant also objected, and the court overruled the objections, and the defendant excepted.

This was, in substance, all the evidence, and the court, among other things, charged the jury, "That if the defendant did not furnish the engine with such a head-light as would enable an engineer to have seen said mule and obstruction not more than thirty yards ahead, then the defendant should not run its train faster than would enable those in charge of it to stop before going that distance, that not having a light by which the engineer could see said mule and obstruction more than thirty yards, the running of the train at such a speed as would prevent its stopping in less than that distance would make the defendant liable for the dam-

ages resulting from such a cause. To this charge the defendant excepted.

The court further charged the jury, that the failure of the defendant to cover the cross-ties of the culvert to prevent stock from falling into and getting fastened in it, was such negligence as would make the defendant responsible for the damages resulting from the killing of plaintiff's mule, if fallen into or fastened in the culvert. To this charge the defendant excepted.

The plaintiff then asked the following written charge: "That, if the jury find from the evidence that the engineer running the train of cars that killed the mule, which is the subject of this litigation, could not perceive, by reason of the character of the head-light, and it being in the night time, an obstruction on the road at a distance greater than thirty yards, and that it was impossible to stop said train of cars at a shorter distance than thirty-five or forty yards, when said train of cars was going at the rate of twelve miles an hour, and that said train was running at the rate of twelve miles an hour, then the killing was the result of negligence, and they will find for the plaintiff." The court give this charge, and the defendant excepted.

The defendant then asked the following written charges: "1. If the jury find from the evidence that the head-light of the engine which ran over the plaintiff's mule, was the same kind of head-light in use by the railroads at the time generally, and that the light was in good order, then because the light did not enable the engineer, when the train was in motion, traveling at the rate of twelve miles an hour, to see the mule so far ahead as the train would go before it could be stopped, does not make the defendant liable for the killing of plaintiff's mule. 2. A railroad has a right to the free and uninterrupted use and enjoyment of its road-bed. The right is the same in character and degree that the owner of land has to the exclusive use and occupation of his premises; and if the mule of plaintiff strayed on the track of the defendant, and got fastened in a water culvert, and whilst there the train came along at or near the hour of midnight, at its usual speed, and the mule could not be seen by the engineer in time to stop the train by putting on brakes and reversing the engine before running over it, then the verdict of the jury must be for the defendant." The court refused to give each of these charges, and the defendant separately excepted. The overruling of the objection of defendant to the question of plaintiff to the engineer, the charges given and the refusal to charge as requested, are now assigned as error.

HUMES & GORDON, for appellant.

ROBINSON & BROWN, *contra.*

MANNING, J.—A yearling mule belonging to appellee, having fallen into a wooden drain, called by the witnesses a culvert, open at the top, between the cross-ties laid upon stringers on appellant's railroad, was run over and killed by a locomotive hauling a train of passenger cars in the night time. The engineer made a report of the accident at the conclusion of the trip, to the company, as it was his duty by its rules to do, and after reading it over, he testified, on the trial of this suit brought by the owner of the mule to recover damages of the company, clearly and unambiguously in regard to the circumstances of the casualty. The accident did not happen near any depot, road-crossing, town, or other place at which the statute requires the observance of certain regulations prescribed by the legislature, such as blowing a whistle, ringing a bell, or reducing the speed of the train, in order to prevent the occurrence of such accidents. The first question, therefore, asked of the witness on cross-examination, and his answer in the negative to it were not relevant and should not have been excluded. Whether the witness, after having run one of his trips, was able or not to " state at what particular points, including depots and road-crossings and towns through which " he passed, he " rang the bell and blew the whistle and did all those things which are required of engineers in driving trains, from Stevenson to Memphis," was matter that could not shed light on the subject under investigation. The circumstances attending the casualty complained of would naturally make a much deeper and sharper impression upon the memory, than the particulars of an ordinary trip during which nothing unusual had happened, and of which no report need be made.

The drain or culvert referred to was open at top, not covered, except as crossed by the superstructure of the railroad; and the court charged that " the failure of the defendant to cover the cross-ties of the culvert, to prevent stock from falling into or getting fastened in it, was such negligence as would make the defendant responsible for the damages resulting from the killing of plaintiff's mule, if fallen into or fastened in the culvert." This was erroneous. A company authorized to build a railroad on land in which it acqnires a right of way, is entitled to the exclusive use of the road when built for the service of the public. It may be made, as such structures usually are, with culverts, upon trestle work, along steep embankments or near the edge of a precipice. And as

it is constructed only for the locomotives and cars of the company to run on, and not to be used as an ordinary highway, for the passage of persons or animals, it is not incumbent on the company to provide against accidents to them, by laying floors or erecting railings or other safe-guards at such dangerous places. The laws of this State do not require that either a railroad, or the lands of individuals, shall be so fenced about and enclosed that domestic animals going at large cannot get upon them. Of course, though, the owners of such unenclosed property would be liable for damages resulting from any violence they should do to live stock straying thereupon, whether produced by acts wilfully, or only negligently committed. But it does not follow that they must take upon themselves the care or protection of such wandering stock, or that, through fear of doing hurt thereto, they must refrain from using their own premises in a lawful manner, beneficially for themselves. The owners of animals that are turned out to go at large—"in the range"—must bear the loss that may come to them from any mere accident not attributable to the positive misconduct or carelessness of another person. Our statute, however, provides that " when any stock is killed or injured, or other property is damaged or destroyed by the locomotive or cars of any railroad, the burden of proof in any suit brought therefor, is on the railroad company to show that the requirements " prescribed by law, to prevent such accidents at road-crossings, depots, and other specified places along the railroad were complied with, that is, if the accidents occurred at such places; and that wheresoever they happened, they were not caused by negligence on the part of the railroad company.—Code of 1876, § 1700 (1401); *M. & O. R. R. Co. v. Williams*, 53 Ala. 597; *Mobile & Montgomery Ry. Co. v. Blakeley* (in MS). But the enactments which purport to make any railroad company of this State liable for live stock or cattle injured or killed by its cars or locomotives, though done without any fault or neglect on the part of said company or its agents, have been adjudged to be in conflict with the constitution of the State and void.—*Zeigler v. South & North Ala. R. R. Co.* (in MS.)

The evidence at the trial tended to show that, although the head-light of the locomotive was of the best kind then in use on the railroads of the country, and was well trimmed and in good order, yet it did not enable the engineer to see the mule until the locomotive was within thirty yards of it; that the train was then running at the rate of twelve miles an hour and could not be stopped within a distance short of forty yards; that the mule was small and of the same color as the earth near it, and between the cross-ties which were laid upon

stringers across the culvert, and that the culvert was some five or six feet deep. The court charged the jury that, if defendant did not furnish the engine with such a head-light as would enable the engineer to see said mule more than thirty yards ahead, then the running of the train at such a speed as would prevent its stopping in less than that distance, would make the defendant liable for damages resulting from such a cause.

The idea at the bottom of this charge, is probably correct. Those who employ the tremendous yet easily controllable power of steam-engines on railroads, must be vigilantly careful to avoid committing with them, the destruction they are capable of effecting; and due care to this end, is not observed when a train is run thereon at such speed that it cannot be stopped within the limit at which the engineer can plainly see upon a straight track an object of the size of a man or a young mule thereon. We say on a *straight track*, because the statute prescribes the precautions to be observed where it is curved. Of course, though, we do not mean to intimate that the engineer must begin to stop a running train whenever he perceives in the distance a person or animal upon the track, through fear of hurting such person or doing an injury to the owner of the animal. Management of that kind would greatly impair the usefulness of railroads, and prevent their due connections with other roads. And the engineer is certainly justified, in presuming that living beings will get out of the way of his train when they can easily do so. The law on this point was explained in *Tanner v. Nashville & Decatur R. R. Co.*, (in MS.) and need not be here repeated.

But the mule colt, the subject of this suit, must have been in a great degree hidden from sight. How far the track was lighted up by the head-light, does not appear. The proof is only, that it did not enable the engineer to see the animal, situated as he was in the culvert. Nor was it shown how much of him was visible above the track. Perhaps it was only his struggling to get away from the approaching train, that brought him into view. If the track was well lighted a much greater distance by the head-light, but the mule by reason of his situation, could not be seen until the locomotive was within thirty yards of him, and it could not be stopped within a shorter distance than forty yards, certainly neither the railroad company, nor the engineer would be in fault for the misadventure of killing the animal. And the Circuit Judge manifestly erred in undertaking to declare as matter of law, that it was negligence to run the train at a speed from which the engineer could not bring it to a stand

[Cauly v. Blue.]

still within the distance at which he could under the circum-
stances, see this mule in a culvert, or partly in a culvert of
the railroad. The question of the negligence or not, should,
with proper instructions by the judge as to the law, have
been left to the jury to decide upon the evidence.

Let the judgment of the Circuit Court be reversed and the
cause be remanded.